DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, wherein defendant-appellant, Joseph R. Dorsey, was found guilty of two counts of breaking and entering, possession of criminal tools, three counts of receiving stolen property-motor vehicle, receiving stolen property, tampering with evidence, and a community control violation.
 {¶ 2} On August 14, 2000, appellant was indicted on one count of breaking and entering, in violation of R.C. 2911.13(B), and one count of possession of criminal tools, in violation of R.C. 2923.24 (CR00-2370.) Appellant was next indicted on September 28, 2000, on one count of breaking and entering, in violation of R.C. 2911.13(A), three counts of receiving stolen property, in violation of 2913.51, one count of receiving stolen property, in violation of R.C. 2913.51 and 2913.71(C), and one count of tampering with evidence, in violation of R.C.2921.12(A)(1) (CR00-2667.) Finally, appellant was indicted on October 24, 2000, on one count of receiving stolen property, in violation of R.C. 2913.51 (CR00-2829.)[1] Appellant entered not guilty pleas as to all of the counts charged in the indictments and the cases were consolidated for trial.
 {¶ 3} The cases proceeded to trial on February 26, 2001. We shall address each case separately and in chronological order as it was presented at trial and discussed in the parties' briefs.
 {¶ 4} Testimony as to CR00-2370 proceeded as follows. Jamie Wlodarski, a mechanic at Homer's Auto Parts, testified that on August 4, 2000, he saw appellant in the fenced-in junkyard, which closed at 5:30 p.m., at approximately 9:15 p.m. Wlodarski testified that he observed appellant for ten to fifteen minutes.
 {¶ 5} Wlodarski further testified that titles to two vehicles were in the tow truck in the yard at the same time as appellant. He stated that appellant did not have permission to have the titles. Dennis McCoy, assistant manager at Homer's, testified that he lives in an apartment above the Homer's office. He stated that he saw appellant in the yard at Homer's at 9:00-9:30 p.m. on August 4, 2000. McCoy testified that he was ten to fifteen feet away from appellant and observed him trying to remove a radiator from a vehicle. When McCoy confronted him and asked why he was there, appellant responded that he fell asleep. McCoy called the police.
 {¶ 6} McCoy identified tools that appellant had at the time of his arrest as not being from Homer's. McCoy indicated that appellant did not have permission to have the two titles.
 {¶ 7} McCoy testified that he checks people in at the office before they're permitted to enter the yard. He had not checked appellant in on that day.
 {¶ 8} Toledo Police Officer Samuel Geiser and his partner responded to a call of a trespass/breaking and entering at Homer's. When they arrived they questioned appellant as to why he was on the premises after business hours. Appellant stated that he had fallen asleep and was trying to leave. Appellant was frisked and numerous tools were found on his person. At that point, appellant was handcuffed.
 {¶ 9} The officers transported appellant to the police station. Geiser testified that, as is standard practice, after appellant exited the police cruiser it was checked to make certain no contraband was "dumped." Geiser stated that he recovered two vehicle titles from underneath the rear seat. Geiser explained that he was certain the titles were appellant's because at the end and the beginning of each shift and prior to going back into service they check the prisoner compartment in the cruiser for contraband.
 {¶ 10} Similar testimony was elicited from Geiser's partner, Toledo Police Officer Diane Trevino. Trevino further testified that at the time of appellant's arrest she noticed the titles sticking out of appellant's back pocket. She stated that at the time she saw the titles she was conducting a weapons check and was not aware of their significance. Toledo Police Detective Brian Twining testified that he confirmed that the titles were the property of Homer's.
 {¶ 11} Regarding the August 4, 2000 incident, appellant testified that he had not been in Homer's at all that day. Appellant stated that he had been walking by when the police arrived and he was targeted because of his prior criminal convictions.
 {¶ 12} The next case is CR00-2829. Oregon Police Officer Brian Emch testified that on August 30, 2000, at approximately 3:00 a.m., he observed a vehicle proceeding westbound on Navarre Avenue, in Oregon, Lucas County, Ohio, with its high beams on. Emch flashed his lights on and off but the driver failed to turn his lights down. Emch testified that he then proceeded to follow the vehicle which had pulled off the road and parked behind a restaurant.
 {¶ 13} Emch approached the vehicle, a white conversion van, and asked the driver why he was parked there. According to Emch, appellant indicated that he was lost and was going to call someone in the morning for assistance. At that point, Emch asked appellant for identification and appellant responded that he did not have any with him. Emch testified that appellant gave him the name Joseph Harris and a social security number which did not match up.
 {¶ 14} Emch testified that while waiting for the dispatcher to check the information he noticed that the steering column had been peeled to allow access to the ignition. Emch asked appellant if it was his vehicle and he responded that it was his uncle's. Emch did not find any keys for the van.
 {¶ 15} Emch again asked appellant what his name was and he gave the name Joseph Dorsey. Dispatch came back and advised Emch that appellant was under suspension and not permitted to drive.
 {¶ 16} Initially, the vehicle had not been reported stolen; however, two days later Emch received a fax from the Maumee Police Department reporting that the van had been stolen sometime between August 28, to August 30, 2000.
 {¶ 17} Michael Stengle, of Stengle Auto Sales in Maumee, Lucas County, Ohio, testified that he had a white conversion van, 1991 Chevrolet High Top, that was stolen in August 2000. Stengle testified that he did not give appellant permission to have the van.
 {¶ 18} Appellant testified that the above incident never happened. He stated that he was in Wisconsin during that time.
 {¶ 19} Case No. CR00-2667 involves multiple counts allegedly occurring on September 18 and September 19, 2000. Mark Sabo, manager of Franklin Park Auto Credit Center on Byrne Road in Toledo, Lucas County, Ohio, testified that he sells used vehicles. On September 18, 2000, Sabo noticed that the office had been broken into and that several keys were missing. Sabo also testified that there were two vehicles missing: a 1999 red Ford Taurus and a 1991 silver Cadillac DeVille. Sabo testified that he had not given appellant permission to enter the office or permission to have the vehicles.
 {¶ 20} Sabo further testified that on September 19, 2000, an individual returned to the lot and removed a 1998 Pontiac Bonneville. The individual was not identified as appellant.
 {¶ 21} Toledo Police Detective William Goetz, classified as a fingerprint expert, testified that he was able to recover some latent fingerprints from the crime scene. Specifically Goetz was able to recover some prints from a window sticker that had been removed from one of the vehicles, purportedly the red Taurus. Goetz testified that the latent fingerprint matched the left thumb print of appellant.
 {¶ 22} Whitman Ford employee Debbie Peters testified that in September 2000, she was the sales manager for new vehicles. Peters testified that sometime in early September 2000, a 2001 beige Crown Victoria was removed from the Whitman lot without permission. The vehicle was recovered a few weeks later.
 {¶ 23} Thomas Rhodes, an employee at Grogan's Towne Chrysler Plymouth, testified that on September 18, 2000, an Ohio license plate, plate number CNK-9421, was missing. Rhodes testified that he did not give appellant permission to have the plate.
 {¶ 24} The state next called Victor Cole to testify. Cole, on the date of trial, was sixteen years old and had a prior criminal record. Cole testified that appellant gave him the keys to the 1998 Pontiac Bonneville which he removed from the Franklin Park Auto Credit Center without permission. Cole stated that he and appellant rode together in the missing Cadillac and the Crown Victoria.
 {¶ 25} Cole testified that he was stopped in the Bonneville by Detective Reasti. When asked, Cole explained to Reasti how he acquired the vehicle and rode in the police cruiser to the house on Lagrange where he believed appellant was residing. Cole stated that when they drove by appellant was on the side of the house and the Crown Victoria was parked in front.
 {¶ 26} Toledo Police Detective Lee Reasti similarly testified that, upon receiving a call that a 1998 Pontiac Bonneville had been stolen, he approached Cole who was driving the vehicle on the morning of September 19, 2000. Cole directed Reasti to the 2300 block of Lagrange Street where Reasti observed appellant and the beige Crown Victoria and wrote down the license plate number as he drove by. Reasti testified that he took Cole home and proceeded back to Lagrange for surveillance. While Reasti was waiting at Lagrange, he received information that the license plate on the Crown Victoria had been reported stolen from Grogan's Towne.
 {¶ 27} Soon thereafter, Reasti testified that appellant and two other individuals got into the vehicle and drove away. Reasti followed them to the McDonald's parking lot at Bancroft and Cherry Streets. Appellant had exited the vehicle when Reasti approached and told him that the car was his cousin's. Thereafter, appellant was transported to the police station.
 {¶ 28} Reasti stated than the Crown Victoria had approximately twelve sets of keys in the passenger compartment and the trunk contained a large number of yellow files which were determined to be the property of Franklin Park Auto Credit.
 {¶ 29} Reasti drove back to the Lagrange address and in the rear discovered a red Crown Victoria that had also been reported stolen. Reasti testified that two doors down they found the red Taurus and the silver Cadillac which were reported stolen from Franklin Park Auto Credit.
 {¶ 30} Toledo Police Officer Mario Wallace testified that he was called to the McDonald's parking lot and ultimately transported appellant to the police station. Wallace took appellant to a holding cell and attached appellant's handcuffs to another set which was attached to a chain connected to a bench. Wallace then sat outside the room waiting for the detective.
 {¶ 31} Wallace stated that while he was waiting, he heard a metal clink coming from the cell; he ran inside to see appellant raising himself back on the bench. Wallace testified that he found a car key up next to the wall and another key wedged in the trim along the wall. The keys were a set of Cadillac keys.
 {¶ 32} As to the above-described events, appellant testified that he was not in possession of any of the subject vehicles. Appellant also stated that he was arrested at 1906 Lagrange, not McDonald's, and that one of the two individuals he allegedly was with was not there. Appellant stated that Cole was lying and that there was a police conspiracy against him regarding multiple auto thefts.
 {¶ 33} Following jury deliberations, appellant was found guilty of all counts in the indictments and this appeal followed. Appellant now raises the following four assignments of error:
Assignment of Error No. 1:
 {¶ 34} "The jury's finding of fact and verdict of guilty with regard to all charges are against the manifest weight of the evidence and therefore are contrary to law."
Assignment of Error No. 2:
 {¶ 35} "With respect to case number CR 00-2370, the trial court improperly instructed the jury that a breaking and entering felony conviction was supported by § 2913.71(D), Ohio Revised Code theft of blank automobile titles, when the evidence failed to demonstrate that the titles in question were in fact blank."
Assignment of Error No. 3:
 {¶ 36} "Appellant's right to a fair trial was prejudiced when the trial court improperly permitted a joinder/consolidation of case numbers CR 00-2370, CR 00-2928 and CR 00-2667 and appellant's trial counsel failed to object to the joinder."
Assignment of Error No. 4:
 {¶ 37} "The trial court's determination that appellant committed a community control violation was erroneous as to case number CR 00-1744 and therefore the reimposition of sentence by the trial court was improper."
 {¶ 38} In appellant's first assignment of error he argues that his convictions were not supported by the manifest weight of the evidence. When an appellate court reverses a verdict as against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "disagrees with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In reviewing the entire record, an appellate court:
 {¶ 39} "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case which the evidence weighs heavily against the conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 40} We shall address each count separately as did the parties in their respective briefs. As to CR00-2370, breaking and entering, appellant contends that the trial court incorrectly determined that the theft of the two auto titles were blank forms for a certificate of title as required under R.C. 2913.71(D).[2] Such a finding was necessary to elevate the charge to a felony.
 {¶ 41} The auto titles at issue were completely filled out on the front of the form with, inter alia, the vehicle identification number, make, model, purchase price, mileage, and owners and previous owners. On the back of the forms, the owners had signed as transferors and the transferees' signature lines were blank. The trial transcript reveals that the court considered the titles "blank" under the statute because the transferees' signature lines were blank. Upon review of the wording and purpose of the statute we disagree.
 {¶ 42} The statute specifically refers to a "blank form for a certificate of title." It is undisputed that the forms, in the strictest sense, were not blank. The forms contained all the necessary identifying information as to specific vehicles. We further note that the purpose of the statute, as gleaned from its wording and the committee notes, is to make the theft of particular items a felony absent proof of their value. Such items, including blank checks and credit cards, have potentially very high values. In the instant case, appellant's act of taking the titles without permission was theft as defined under R.C. 2913.02. In order to elevate the offense to a felony a specified value of the titles had to have been proven. The value of the titles was not proven in this case[3] and, thus, appellant's conviction under R.C. 2913.71(D) was against the manifest weight of the evidence.
 {¶ 43} Relatedly as to CR00-2370, possession of criminal tools, appellant argues that because the titles in this case were not blank, appellant's conviction for possession of criminal tools for use during the commission of a felony was, likewise, erroneous. R.C. 2923.24(C) provides:
 {¶ 44} "Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree."
 {¶ 45} Because we have determined that the titles were not blank forms as required to elevate the theft to a felony offense, we further find that appellant's conviction for possession of criminal tools was not properly elevated to a felony offense. Accordingly, we find that the conviction was against the manifest weight of the evidence.
 {¶ 46} We now turn to case number CR00-2829 wherein appellant was convicted of receiving stolen property-motor vehicle. At trial, testimony was presented that on August 30, 2000, Oregon Police Officer Brian Emch identified appellant as operating a van that was later reported stolen. We cannot say that they jury lost its way when it found Emch's testimony to be credible.
 {¶ 47} The following six manifest weight challenges all stem from case number CR00-2667. We shall address each in the order presented by the parties.
 {¶ 48} Appellant first contends that his conviction for breaking and entering the office at Franklin Park Auto Credit is not supported by credible evidence. Appellant specifically argues that there was no physical evidence demonstrating that appellant ever entered the structure and that Victor Cole's testimony regarding the break-in was not credible.
 {¶ 49} Upon review of the testimony presented regarding the break-in, including Cole's testimony, we cannot say that the jury lost its way when it found appellant guilty of the breaking and entering count relating to the Franklin Park Auto Credit Center office.
 {¶ 50} Appellant next disputes the jury's finding of guilt as to receiving stolen property, to wit, the Ford Taurus. Appellant contends that there is no physical evidence linking appellant to the vehicle.
 {¶ 51} Testimony presented at trial revealed that the Taurus was taken from Franklin Park Auto Credit at the same time the Cadillac DeVille was taken. Both vehicles were found parked on a vacant lot two doors down from where appellant had been staying. Appellant was caught trying to hide the Cadillac keys which had been on his person at the time of his arrest. Further, Toledo Police Detective William Goetz testified that the fingerprints recovered which were identified as appellant's came from a dealer sticker that had been removed from the Taurus. Based on the foregoing, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty as to this charge.
 {¶ 52} Appellant next challenges his receiving stolen property-motor vehicle conviction as it relates to the Cadillac DeVille. Appellant contends that he did not have constructive possession of the vehicle. As stated above, appellant was caught trying to hide they keys while in the holding cell. Further, witness Victor Cole rode with him in the Cadillac. Based on these facts, we cannot say that appellant's conviction as to this charge was against the manifest weight of the evidence.
 {¶ 53} Finally, as to the Crown Victoria, appellant challenges his convictions for receiving stolen property-motor vehicle and license plate. Appellant largely rehashes the argument raised at trial which involved a police conspiracy against him. The state presented evidence that Cole informed the police as to appellant's involvement in the case, that police observed appellant driving the Crown Victoria, and the license plates on the vehicle were reported as stolen. Based on our review of the trial transcript, we cannot say that the jury's findings of guilt as to the receiving stolen property charges were against the manifest weight of the evidence.
 {¶ 54} Lastly, appellant disputes the trial court's guilty verdict as to the tampering with evidence charge. We find that credible evidence was presented demonstrating that appellant attempted to hide the Cadillac keys while he was placed in the holding cell. Thus, the jury's verdict was not against the manifest weight of the evidence.
 {¶ 55} Accordingly, we find appellant's first assignment of error well-taken, in part, and not well-taken, in part.
 {¶ 56} Appellant's second assignment of error claims that the trial court improperly instructed the jury regarding the breaking and entering charges applicable to Homer's Auto Parts. Based upon our determination that the titles at issue did not meet the definition of R.C. 2913.71(D), we find appellant's second assignment of error well-taken.
 {¶ 57} In his third assignment of error, appellant contends that his right to a fair trial was violated when the trial court permitted the consolidation of case numbers CR00-2370, CR00-2928, and CR00-2667. Appellant notes that his trial counsel did not object to the consolidation and acknowledges that the error should be reviewed under the plain error standard. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long
(1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 58} The charges in this case occurred within a two-month period of time and all involved automobile thefts, automobile title thefts, and other criminal acts relating to such thefts. The testimony was presented in sequential order with all the testimony as to one case completed prior to presenting evidence in another case; thus, lessening the chance of jury confusion.
 {¶ 59} Based on the foregoing, we cannot say that counsel's failure to object to the consolidation of the cases amounted to plain error and, moreover, absent the consolidation, we cannot say that the outcome of the trial clearly would have been different. Appellant's third assignment of error is not well-taken.
 {¶ 60} Appellant's fourth and final assignment of error contends that the trial court erred when it found that appellant committed a community control violation. Based on our disposition of the above three assignments of error, we find appellant's fourth assignment of error not well-taken.
 {¶ 61} On consideration whereof, we find that appellant was prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is reversed, in part, and affirmed, in part, and remanded for further proceedings consistent with this decision. Costs of this appeal are assessed to appellee.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] An indictment was also filed against appellant on May 9, 2000, charging one count of receiving stolen property and one count of possession of criminal tools and community control violation. A no contest plea was entered on July 18, 2000 to attempted receiving stolen property and possession of criminal tools. CR00-1744, consolidated on appeal, concerns a community control violation conviction stemming from these charges.
[2] {¶ a} R.C. 2913.71 provides, in relevant part:
 {¶ b} "Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 is a felony of the fifth degree if the property involved is any of the following:
 {¶ c} "* * *
 {¶ d} "(D) A blank form for a certificate of title or a manufacturer's or importer's certificate to a motor vehicle, as prescribed by section 4505.07 of the Revised Code; * * *."
[3] In any event, the total purchase price for the two salvage vehicles, as evidenced on the titles, was $75.